```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

DWIGHT THOMAS PERRY

                Plaintiff,          1:17-cv-01306-MAT
         -v-                        DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

**INTRODUCTION**

Dwight Thomas Perry ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "defendant"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted to the extent that the matter is remanded solely for calculation and payment of benefits. Accordingly, Defendant's motion is denied.

**PROCEDURAL BACKGROUND**

On November 20, 2008, Plaintiff protectively filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"), alleging disability beginning March 11, 2007. Administrative Transcript ("T.") 244-49. The claim was initially denied on April 22, 2009, and Plaintiff timely requested a hearing. T. 127-34. On September 14, 2010, a hearing was conducted in Buffalo, New York by administrative law judge ("ALJ") William M. Weir. T. 81-104. Plaintiff appeared with his attorney and testified. ALJ Weir issued an unfavorable decision on October 7, 2010. T. 109-18. Plaintiff timely requested review of the ALJ's decision by the Appeals Council ("AC"). On May 25, 2012, the AC remanded the case for further development of the record. T. 123-25.

On October 22, 2012, Plaintiff appeared with his attorney and testified before ALJ Weir at a second hearing in Buffalo, New York. T. 34-80. A vocational expert ("VE") and medical expert ("ME") also testified. *Id*. ALJ Weir issued a second unfavorable decision on April 24, 2013. T. 14-28. Plaintiff again requested review of the ALJ's decision by the AC. T. 12. The AC denied Plaintiff's request for review on October 21, 2014, making ALJ Weir's decision the final decision of the Commissioner. T. 1-3. Plaintiff then timely commenced an action in this Court and, on January 1, 2016, the case was remanded to the Commissioner for further proceedings. T. 563-

70; *Perry v. Colvin*, No. 1:14-CV-01028(MAT), 2016 WL 241364 (W.D.N.Y. Jan. 21, 2016).

On September 26, 2016, a hearing was conducted in Buffalo, New York by ALJ Sharon Seeley. T. 481-538. Plaintiff appeared with his attorney and testified. A VE also testified. *Id*. ALJ Seeley issued a partially favorable decision on October 4, 2017. T. 449-72. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

ALJ Seeley applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one of the sequential evaluation, ALJ Seeley found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 11, 2007. T. 457.

At step two, ALJ Seeley determined that since the alleged onset date of March 11, 2007, Plaintiff suffered from the "severe" impairments of degenerative disc disease of the lumbar spine; learning disability; and alcohol use/dependence. T. 457. ALJ Seeley also determined that Plaintiff's medically determinable impairments of asthma and acute costochondritis had no more than a minimal impact on Plaintiff's ability to work and thus, were non-severe. T. 457-58. ALJ Seeley further found Plaintiff's alleged impairment of adjustment disorder with mixed anxiety and depressed mood was

not supported by the medical record and accordingly, was not a medically determinable mental impairment. T. 458-60.

At step three, ALJ Seeley found that since the alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 460.

Before proceeding to step four, ALJ Seeley assessed that prior to May 14, 2014, Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: could lift and carry twenty pounds occasionally and ten pounds frequently; sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs and ladders, ropes or scaffolds; could understand, remember, and carry out simple, routine instructions and tasks; maintain attention and concentration sufficient for such tasks with customary breaks; make simple, routine work-related decisions commensurate with such tasks; and work in an environment with no more than occasional changes in work routines, processes, or setting; could have occasional interaction with coworkers, but not work in teams or in tandem with others; and have occasional interaction with the general public. T. 461-62.

4

ALJ Seeley further assessed that as of May 14, 2014, Plaintiff had the RFC to perform less than a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations: can lift and carry ten pounds occasionally and light items such as folders or small tools frequently; can sit six hours in an eight-hour workday; stand and/or walk two hours in an eight-hour workday; occasionally balance, stoop, and climb ramps or stairs and rarely (meaning one-to-five percent of the workday) kneel, crouch, crawl, and climb ladders, ropes or scaffolds; he can understand, remember, and carry out simple, routine instructions and tasks; maintain attention and concentration sufficient for such tasks with customary breaks; make simple, routine work-related decisions commensurate with such tasks; and work in an environment with no more than occasional changes in work routines, processes, or setting; can have occasional interaction with coworkers, but not work in teams or in tandem with others; and have occasional interaction with the general public. T. 467-68.

At step four, ALJ Seeley determined that Plaintiff has been unable to perform any past relevant work since the alleged onset date of March 11, 2007. T. 469. At step five, ALJ Seeley relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed from the period of March 11, 2007

through May 13, 2014, including the representative occupations of cleaner, assembler, and cafeteria attendant. T. 470-71.

ALJ Seeley further found that beginning on May 14, 2014, taking into account Plaintiff's age, education, work experience, and updated RFC, there are no jobs that exist in significant numbers in that national economy that Plaintiff can perform. T. 471. Accordingly, ALJ Seeley found that Plaintiff has been disabled since May 14, 2014. T. 472.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774

6

(2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends the ALJ's determination that Plaintiff's onset date was May 14, 2014 is not supported by substantial evidence. In particular, Plaintiff argues the ALJ erred in assuming Plaintiff's onset date was the same day as Plaintiff's MRI showing lumbar spine impairment worsening, without taking any testimony from a medical advisor. For the reasons set forth below, the Court finds the ALJ's onset date determination of May 14, 2014 is unsupported by substantial evidence.

**I. Plaintiff's History of Lower Back Pain Prior to May 14, 2014**

On November 20, 2008, Plaintiff protectively filed for DIB and SSI, alleging disability beginning March 11, 2007, due to three slipped discs in his back, neck and back injury, arthritis, memory problems, asthma, and a learning disability. T. 244-49.

On January 22, 2009, Plaintiff complained to Dr. Pratibha Bansal of constant, shooting pain in his lower back that radiated down to both knees, with occasional numbness in his right knee area. T. 361. Plaintiff reported these symptoms began in 2000 and

7

was aggravated by standing and walking for prolonged periods of time. *Id*.

On March 31, 2009, Plaintiff received an internal medicine examination by consultative examiner, Dr. Cindrea Bender. T. 369-72. Plaintiff reported back pain located in the center of his lower back, radiating to both sides and on occasion, down both lower extremities. T. 369. Plaintiff reported the pain began in 2000 with no inciting injury. Plaintiff reported going to physical therapy twice a week for the past year, which improves his pain. *Id*.

Upon examination, Plaintiff exhibited an abnormal gait, with marked stiffness and a wide stance. T. 370. Plaintiff was able to walk on heels and toes without difficulty, but was only able to squat at twenty percent. *Id*. Plaintiff's cervical spine showed full flexion, extension, lateral flexion and full rotary movements bilaterally. His lumbar spine showed full flexion at forty-five degrees and extension to five degrees. Lateral flexion was fifteen degrees bilaterally, and lumbar spine rotation was fifteen degrees bilaterally. T. 371. Plaintiff's straight leg raising test was negative on both sides and he exhibited a full range of motion of his hips, knees, and ankles on both sides. *Id*.

Dr. Bender opined Plaintiff had moderate limitations with bending, lifting excessively large objects, walking prolonged distances, sitting prolonged periods and standing for prolonged periods secondary to his low back pain. T. 372. Dr. Bender further

8

opined Plaintiff had mild limitations with walking prolonged distances and climbing an excessive number of stairs secondary to his asthma, and should avoid environmental triggers of asthma. *Id*.

On April 22, 2009, a lumbar spine X-ray revealed mild spondylosis and right-side sacroiliac changes. T. 422. On May 2, 2009, a lumbar spine MRI revealed disc degeneration with loss of disc height, loss of disc signal, and bulging annulus and end plate granulation at L1-L4. T. 421. L5-S1 had disc degeneration with loss of disc height, loss of disc signal, end plate granulation and edema and bulging annulus. No spinal stenosis or disc herniation was noted. *Id*.

On May 11, 2009, Dr. Walter Grand examined Plaintiff and reviewed the MRI results. T. 416. Dr. Grand diagnosed Plaintiff with lumbago, lumbar spondylosis without myelopathy and noted the MRI appeared to reveal degenerative disc disease. *Id*.

On April 1, 2010, neurologist Dr. Marc Frost examined Plaintiff for his low back pain. Plaintiff reported his back pain had been worsening since 2000, but originated from a 1988 motor vehicle accident. T. 445. Dr. Frost noted Plaintiff's medical history was significant for back pain, with asthma and depression, and an apparent history of ulcers. Dr. Frost further noted Plaintiff's social history was noncontributory to his symptoms. *Id*.

Upon examination, Dr. Frost noted Plaintiff had some limitations and give-way in his motor strength due to pain,

9

particularly in his lower extremities. T. 446. Plaintiff had some patchy diminished pinprick sensation in his lower extremities. His plantar responses were down-going on both sides. The straight leg raising test produced pain at minimal elevation. Dr. Frost noted Plaintiff's gait was antalgic, but stable, and Plaintiff's posture was mildly hunched and bent at the waist. *Id*. Plaintiff was unable to perform a deep knee bend. Dr. Frost assessed Plaintiff with degenerative disease in his lumbar spine, and suspected his symptoms were primarily musculoskeletal. Plaintiff was prescribed gabapentin, three times daily. *Id*.

The record contains no medical records from 2011 through May 2014. *See* T. 466. Plaintiff testified his lack of treatment during that period was due to a lack of insurance. T. 499-503.

On May 14, 2014, Plaintiff underwent an MRI of the lumbar spine. T. 790. The MRI revealed disc space narrowing, disc desiccation, and a small midline disc herniation exerting mass effect on the thecal sac and exiting bilateral nerve roots at L5-S1. It further revealed mild disc space narrowing and disc desiccation without appreciable stenosis at L1-L4. *Id*.

## II. ALJ Seeley's Finding that Disability Began on May 14, 2014 is Not Supported by Substantial Evidence

In her decision, ALJ Seeley recounted the medical history noted above. *See* T. 463-65. However, she found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning

the intensity, persistence, and limiting effects of his symptoms were not fully supported prior to May 14, 2014. T. 465. She further found that while Plaintiff testified his lack of insurance impaired his ability to obtain medical treatment, the treatment that does exist in the record does not strongly support his allegations. T. 466. Furthermore, ALJ Seeley noted that the record does not contain recommendations of aggressive treatment that Plaintiff was unable to afford. *Id*. Accordingly, ALJ Seeley found that Plaintiff was not disabled prior to May 14, 2014. T. 471.

Plaintiff contends ALJ Seeley's determination that Plaintiff was not disabled prior to May 14, 2014 is unsupported by substantial evidence because ALJ Seeley failed to seek the medical opinion of a medical advisor as required by Social Security Regulation ("SSR") 83-20, 1983 WL 31249 (Jan. 1, 1983). For the reasons set forth below, the Court agrees.

Plaintiff alleged disability beginning March 11, 2007. T. 244-49. While Plaintiff testified he believed he tried to do some part-time cleaning work in 2009, earning records indicate no earnings since 2007. T. 457 citing T. 233-40.

"As a general rule, a claimant's allegation regarding the date of onset must be accepted provided it is consistent with medical evidence of record." *Nix v. Colvin*, No. 15-CV-0328-FPG, 2016 WL 3681463, at *5 (W.D.N.Y. July 6, 2016) (*quoting Corbett v. Comm'r of Soc. Sec.*, No. 7:08-CV-1248, 2009 WL 5216954, at *13 (N.D.N.Y.

11

Dec. 30, 2009) (*citing* SSR 83-20, at*3)). When the ALJ determines the onset date is different than the date the claimant alleges, the ALJ has an affirmative duty to adduce substantial evidence to support the new onset date. *Id*.

SSR 83-20 further provides that with slow progressive impairments, such as Plaintiff's degenerative disc disease of the lumbar spine in this case, it is sometimes impossible to obtain medical evidence establishing the precise date that an impairment became disabling. *Id*. at *2. In such cases, "it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established." *Id*. Instead, it may be possible, based on the medical evidence available, to reasonably infer that the onset date occurred sometime prior to the date of the first medical examination, such as when the claimant stopped working. *Id*. at *3.

"An inferred onset date, however, 'depends on an informed judgment of the facts in the particular case' and must have a 'legitimate medical basis.'" *Feliciano v. Colvin*, No. 14cv5391-FM, 2016 WL 4272375, at *5 (S.D.N.Y. Aug. 10, 2016) (quoting SSR 83-20, at *3). Accordingly, in such cases, SSR 83-20 provides that the ALJ "should call on the services of a medical advisor" and, if necessary, "[i]nformation may [also] be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish

12

additional evidence regarding the course of the individual's condition." *Id*. at *3.

The Court finds ALJ Seeley's determination that Plaintiff was disabled from May 14, 2014 forward is well-supported by substantial evidence. In particular, ALJ Seeley supported her finding with an MRI dated May 14, 2014 that revealed Plaintiff's degenerative disc disease of the lumbar spine had continued to worsen since his 2009 MRI. (The 2009 MRI showed multi-level disc degenerative changes, abnormal disc height and disc signal, and bulging annulus at all levels of Plaintiff's lower spine, with the exception of L4-L5. T. 464, 468.)

ALJ Seeley further supported her disability finding with the medical records subsequent to the May 2014 MRI. T. 469. Specifically, ALJ Seeley found that the level of treatment Plaintiff pursued, along with his treating source's opinions since the 2014 MRI corroborated Plaintiff's allegations of disability. *Id*.

The Court further finds, however, that ALJ's Seeley's determination that Plaintiff's disability did not begin prior to May 14, 2014 is not adequately supported by substantial evidence. SSR 83-20 plainly provides that where the medical evidence of record does not provide a clear onset date and the date must be inferred, the ALJ should seek the assistance of a medical expert to

13

make this inference. *Id*. ("At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred.").

ALJ Seeley made no attempts to enlist the services of a medical advisor, nor did she seek information from Plaintiff's family members, friends, or former employers to provide additional evidence regarding Plaintiff's degenerative condition and how it impacted his ability to function prior to the May 2014 MRI. *See* SSR 83-20, at *3.

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

Instead, ALJ Seeley independently determined that Plaintiff's degenerative disc disease impairments became disabling on May 14, 2014 - the date he underwent an MRI that showed continued degenerative changes. T. 467-68. This was error. *See Martinez v. Barnhart*, 262 F.Supp.2d 40, 46 (W.D.N.Y. 2003) (collecting cases) ("the ALJ should have appointed a medical advisor to assist him in selecting an appropriate onset date that could be inferred from the record as a whole.").

The Court finds the Commissioner's argument unconvincing that ALJ Seeley was not required to utilize a medical advisor in this

14

instance. The Second Circuit has held that an ALJ is not required to seek the opinion of a medical advisor to infer an onset date as long as substantial evidence supports the ALJ's onset date finding. *See Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008). However, *Monette* is clearly distinguishable from the facts of this case.

In *Monette*, the ALJ cited to contemporaneous medical records to support the finding plaintiff was not disabled during a particular period, including medical assessments of minimal functional limitations throughout the period *Monette* claimed he should have been found to be disabled. *See id.* at *113. Accordingly, medical evidence supported the ALJ's finding that *Monette's* disability did not begin prior to the determined onset date.

However, this case is distinguished from *Monette* since there were no medical records between 2010 and 2014 for ALJ Seeley to base her onset date determination - or to support the conclusion that there was no disability during that period. Accordingly, it was error for ALJ Seeley to conclude Plaintiff was not disabled prior to May 14, 2014, without first calling a medical advisor to testify at the hearing. *See Czerniejewski v. Astrue*, No. 07-CV-476A, 2008 WL 4296638 at *6 (W.D.N.Y. Sept. 19, 2008) (Ambiguous medical evidence required the ALJ to call upon the services of a medical advisor to infer the disability onset date); *see also*

15

*Martinez*, 262 F.Supp.2d at 48 ("Just because plaintiff's disability went untreated does not mean he was not disabled.") (quoting *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000).

**REMEDY**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Remand solely for calculation and payment of benefits is appropriate where the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that additional evidence exists that might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385–86 (2d Cir. 2004).

For the reasons set forth above, the Court finds that ALJ Seeley failed to follow the procedures set for in SSR 83-20 and further failed to support her onset date determination with substantial evidence. Furthermore, the ALJ already found Plaintiff was disabled as of May 14, 2014. Additionally, there is no contradictory medical evidence in the record that Plaintiff was not disabled during the period he was uninsured and not receiving treatment. Moreover, Plaintiff's claim had already been remanded by this Court once before and "the Second Circuit has consistently emphasized the importance of the Commissioner's burden to support her step-five determination with substantial evidence, and has held

16

that a reversal with a remand only to calculate damages is warranted when the ALJ has failed to meet that burden." *Peach v. Berryhill*, No. 1:17-CV-00201-MAT, 2018 WL 4140613, at *5 (W.D.N.Y. Aug. 30, 2018) (internal quotation marks omitted).

Finally, while SSR 83-20 directs that ALJ Seeley should have appointed a medical advisor to assist with the determination of an onset date, or otherwise develop the record more throughly, that step is not necessary at this stage. *See Martinez*, 262 F.Supp.2d at 49 (remanding for calculation and payment of benefits where the record demonstrated disability, there were no other medical records available, and further administrative proceedings would serve no purpose). The record in this case is complete, and further development cannot reasonably be expected to support a finding that Plaintiff is not disabled. Accordingly, the Court finds that remand solely for the calculation and payment of benefits from the date of Plaintiff's alleged onset date of March 11, 2007 is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 13) is denied, and Plaintiff's motion for judgment on the pleadings (Docket No. 9) is granted. The case is remanded solely for the

calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   January 4, 2019
         Rochester, New York